**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| **Jarvis Desmond Daniels,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **1:20cv933 (AJT/TCB)** |
| | ) | |
| **Harold Clarke,** | ) | |
| **Respondent.** | ) | |

<u>MEMORANDUM OPINION</u>

Jarvis Desmond Daniels ("Daniels" or "Petitioner"), a Virginia inmate proceeding <u>pro se</u>,

filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions

in the Circuit Court of the City of Richmond, Virginia for of two counts of malicious wounding,

two counts of the use of a firearm in the commission of malicious wounding, one count of

maliciously shooting at an occupied vehicle, and one count of possessing a firearm after having

previously been convicted of a violent felony. [Dkt. No. 1]. Respondent has filed a Motion to

Dismiss, with a supporting brief and exhibits. [Dkt. Nos. 18-20]. Petitioner was notified of his right

to respond after receiving the notice required by <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975)

[Dkt. No. 21], and has responded. [Dkt. Nos. 11, 12, 16, 24].[1] Accordingly, this matter is now ripe

for disposition. For the reasons that follow, respondent's Motion to Dismiss must be granted, and

the petition will be dismissed.

**I. Procedural History**

On September 28, 2016, Daniels was convicted in a bench trial in the Circuit Court of the

City of Richmond of two counts of malicious wounding, two counts of the use of a firearm in the

---

[1] In his several responses, Daniels seeks leave to amend his petition to include his affidavit that states counsel did not investigate or share the evidence with him. Daniels also seeks to introduce documents he believes establish that the victim identified someone else from the photo lineup. The motions are addressed within the related claims.

commission of malicious wounding, one count of maliciously shooting at an occupied vehicle, and one count of possessing a firearm after having previously been convicted of a violent felony. (CCT R. at 56-57). By order dated April 18, 2017, the trial court sentenced Daniels to 63 years in prison, with 50 years suspended. (CCT R. at 124-26).

Daniels appealed his convictions to the Court of Appeals of Virginia and alleged the following errors: that the evidence was insufficient; that the trial court erred by not running his firearm sentences concurrent with one another; and the court erred in revoking his suspended sentences. In finding the evidence sufficient to support his convictions, the Court of Appeals of Virginia summarized the evidence at trial as follows:

> [O]n the night of May 8, 2015, Antonia Friarson was traveling with his fiancée Raneeka Gaither in Gaither's vehicle. Friarson was driving. Around 11:30 p.m., they made a stop at Friarson's aunt's apartment. As Friarson drove out of the alley behind the apartment to depart, another car pulled into the alley up next to Gaither's, on its driver's side. Light illuminated the immediate area, and the driver was not wearing a hat or sunglasses. Recognizing the other driver as appellant, whom Friarson had known for about two years, Friarson rolled down his window to speak to appellant. Friarson then saw appellant lean back, pull out a gun, and aim. Friarson described the gun he saw as a silver revolver. Friarson leaned back, raised his arm to shield his face, and heard five to six gunshots as appellant began shooting. Although initially reclined in the passenger's seat, Gaither sat up when she heard the shots and saw appellant shooting at them. Gaither told Friarson to pull out, and they drove away.

> Both Friarson and Gaither were shot. Friarson sustained a gunshot wound to his left forearm, resulting in visible scarring and lingering nerve damage; and Gaither was hit under her left arm, with the bullet exiting her back, leaving her with a scar at the exit point and occasional flare-ups of a burning sensation. Friarson drove to the emergency room at a nearby hospital for them to be treated. When Friarson spoke to police at the hospital, he explained what had happened, and told police that appellant was the shooter. Friarson further identified appellant from a photo lineup. Gaither provided the responding officers with a similar account of the encounter, but did not provide a physical description of the shooter.

> In subsequently searching Gaither's vehicle, police observed three bullet holes on the driver's door, broken out glass, two bullet holes in the passenger seat, and some blood stains. Police recovered five bullets at the scene.

> At trial, Friarson admitted that he was a convicted felon and that he had smoked marijuana the morning of the shooting. He also had consumed some alcohol. He relayed that he was in the alley after leaving some money at his aunt's apartment.

He testified that a streetlight illuminated the area so that he could see it was appellant in the other car. He denied making prior inconsistent statements when talking to police after the incident. He expressed that there had been no prior confrontation with appellant. When challenged on his recognition of appellant, Friarson stated, "I'm not going to stop and speak to somebody I don't know." When the Commonwealth asked, "Is there any doubt in your mind as to who the person was who shot you?", Friarson responded, "No, ma'am, there's no doubt."

Gaither also testified. She offered a differing account as to why she and Friarson were in the area. She also denied making certain statements to police when questioned at the hospital. She testified that she observed appellant shooting when she sat up from her reclined position.

The defense called Officer William Cole, Detective Mark Godwin, and Detective Greg Russell of the Richmond Police Department as witnesses. Cole testified that, at the hospital, Friarson related to him that he had dropped some money off at his aunt's and that a vehicle approached as he was leaving. According to Cole, Friarson further told him that, "when he started to roll the window down, he noticed a silver revolver, and a person that he knew, named Jarvis, started shooting." Cole testified that Gaither relayed essentially the same information, but clarified that she did not specify that the gun was a revolver, stated that they had dropped an unknown male off at the corner, and did not provide a description of the shooter.

Detective Godwin also interviewed the victims, whom he described as fairly shaken up. He stated that he did not get a description of the shooter from Gaither and that she did not see the perpetrator, yet she used appellant's name when describing the event. Godwin testified that Friarson identified appellant as the driver of the other car and as the person who shot him. Godwin said that Friarson told him he could see the weapon because of the interior lights of the car.

Detective Greg Russell, without any knowledge of the potential suspect, conducted a double-blind photo lineup with Friarson. Friarson identified appellant from the photographs. Russell stated that Friarson's response was "immediate [-] When he hit picture number four, it was a recognizable, that's him, that's who shot me tonight."

Daniels v. Commonwealth, Record No. 0807-17-2 (CAV R. at 49-51).[2] A judge of the Court of

Appeals denied his petition for appeal on December 6, 2017, and a three-judge panel affirmed the

denial on February 16, 2018. (CAV R. at 61). Daniels raised the same issues in a petition for appeal

to the Supreme Court of Virginia, which was refused on August 23, 2018. Daniels v.

Commonwealth, Record No. 180364.

---

[2] Friarson's name has more than one spelling in the state court records. For clarity, Friarson will be referred to either by "Friarson" or "the victim."

3

Daniels filed a state petition for writ of habeas corpus on July 5, 2017, in the Supreme Court of Virginia. Daniels v. Clarke, Record No. 170958, (R. No. 170958 at 1). On November 21, 2017, the respondent filed a motion to dismiss and Daniels sought leave to amend his petition in order to add new claims, or, to withdraw it in the alternative—which the Supreme Court denied. (R. No. 170958 at 111). Daniels non-suited his petition on July 19, 2018. (R. No. 170958 at 144).

On December 10, 2018, Daniels filed a new petition for writ of habeas corpus in the Supreme Court of Virginia, Daniels v. Clarke, Record No. 181641, and raised the following claims:

1. Trial counsel was ineffective for failing to cross-examine Detective Godwin "about what made the Commonwealth's main witness [Friarson] change his story back to saying petitioner was the shooter" or "about the conversation Nunnally had with [Friarson] at the jail."); (R. No. 181641 at 23-25).

2. Trial counsel was ineffective because he failed to call the previous prosecutor at trial, Kevin Nunnally, or Detective Travers from the Richmond police department, as witnesses in order to impeach [Friarson]; (R. No. 181641 at 29-37).

3. Trial counsel was ineffective because he failed to object or file a motion to suppress the in-court identification of the prosecution's main witness as being unreliable; (R. No. 181641 at 19-22).

4. Trial counsel was ineffective for failing to file a motion for the multi-jurisdictional grand jury transcripts of Friarson's testimony and because counsel did not "investigate." (R. No. 181641 at 1922-23).

The court dismissed the petition on December 6, 2019. (R. No. 181641 at 5782).

Daniels filed his § 2254 petition on August 3, 2020, and raises the following claims:

1. Trial counsel was ineffective for failing to file a motion to suppress the in-court identification by the victim. [Dkt. Nos. 1 at 5].

2. Trial counsel failed to call "two important fact witnesses," Detective Godwin and prosecutor Kevin Nunnally. [Id. at 6-7].

3. Counsel failed to disclose to petitioner "the exact nature of the witness issues" that caused the prosecutor to seek a nolle prosequi (before reindictment), which deprived Daniels of the right to fully participate in his defense. [Dkt. No. 1-1 at 17].

4. Trial counsel's investigation was ineffective because he did not identify a witness and a confidential informant and call them as witnesses to impeach the prosecution's witnesses. [Id. at 23].

5. Trial counsel conducted an inadequate investigation (victim's blood alcohol level; grand jury transcript; identification of witnesses; and the crime scene). [Id. at 23-29].[3]

## II. EXHAUSTION AND DEFAULT

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000). Exhaustion requires that a petitioner must have presented "'both the operative facts and the controlling legal principles'" to the state's highest court. Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002) (quoting Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997)); see also Valentino v. Clarke, 972 F.3d 560, 575 (4th Cir. 2020) ("it would be unseemly" for federal court "to upset a state court conviction without an opportunity for the state courts to correct a constitutional violation") (citation and internal quotation marks omitted).

The exhaustion "requirement is ... grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991); accord Hedrick v. True, 443 F.3d 342 (4th Cir. 2006). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. Mallory v. Smith, 27 F.3d 991, 994-95 (4th Cir. 1994).

"A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker, 220 F.3d at 288; see Bassette v. Thompson, 915

---

[3] The petition designates only two claims: that counsel was ineffective in not filing a motion to suppress Daniels' in-court identification and that counsel was ineffective for not calling Nunnally and Godwin to impeach the victim. [Dkt. No. 1 at 5, 6-7] (Claims 1 and 2). Respondent undesignated Claims 3-5 as claims. The three claims are included in the brief Daniels submitted in support of his petition. For clarity, the Court will address the five claims as identified by respondent.

F.2d 932, 936-37 (4th Cir. 1990). Such claims are technically exhausted and are defaulted. Baker, 220 F.3d at 288.

A defaulted claim, however, may be reviewed if a petitioner can show cause for the default and prejudice stemming therefrom, or that a fundamental miscarriage of justice otherwise will occur. Breard v. Pruett, 134 F.3d 615, 620 (4th Cir. 1998) (citation omitted). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990). Importantly, a court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995).

Respondent admits that Daniels raised Claims 1, 2, a portion of Claim 4, and portions of Claim 5 in the state petition the Supreme Court of Virginia dismissed on December 6, 2019, but argues that Claim 3, a portion of both Claim 4 and Claim 5 were not raised in the state petition and are therefore defaulted. [Dkt. No. 20 at 6].

Claim 3 alleges trial counsel did not discuss the nature of the witness issues with him that resulted in the charges being terminated by the entry of a *nolle prosequi* prior to the original trial date in April 2016. The Supreme Court of Virginia's order dismissing the state habeas specifically references the disclosure of the information trial counsel learned during his investigation before trial about the prior inconsistent statement that Daniels alleges was not disclosed. While not designated a separate claim by number, federal Claim 3 was raised in the state petition and included in the ruling dismissing the state petition. Federal Claim 3 is interrelated to and overlaps with federal Claim 2, which concerns counsel's failure to call Nunally and Goodwin as witnesses at trial and will be considered together herein as they were in the state proceedings. The portions of Claim 4 (the

6

unidentified witness) and Claim 5 (inadequate investigation), which respondent asserts are defaulted, while not designated by number in the state habeas proceedings, were also discussed in the Supreme Court of Virginia's December 6, 2019 order dismissing the state petition. In sum, all five claims are exhausted.

### III. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), "a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Knowles v. Mirzayance, 556 U.S. 111, 121 (2009). "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 20 (2013).

An unreasonable application of federal law is not the same as an incorrect application. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); accord Renico v. Lett, 559 U.S. 766, 772-73 (2010). That is, the state court's judgment "must be objectively unreasonable, not merely wrong; even clear error will not suffice." White v. Woodall, 572 U.S. 415, 419 (2014) (internal quotations and citation omitted); see Harrington v. Richter, 562 U.S. 86, 103 (2011) (state decision is unreasonable application of federal law only if ruling was so "lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement").

This "highly deferential standard ... demands that state court decisions be given the benefit of the doubt." Renico, 559 U.S. at 773 (internal quotations and citations omitted). "The required

deference encompasses both the state court's legal conclusions and its factual findings." Lenz v. Washington, 444 F.3d 295, 299 (4th Cir. 2006). "[A] determination on a factual issue made by a State court shall be presumed correct." Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003) (quoting 28 U.S.C. § 2254(e)(1)). "In reviewing a habeas petition, federal courts must presume the correctness of a state court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence." Green v. Johnson, 515 F.3d 290, 299 (4th Cir. 2008); see Schriro, 550 U.S. at 473-74.[4]

Claims of ineffective assistance of counsel are determined based on the highly demanding standard set forth for such claims in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, the petitioner has the burden to show both that his attorney's performance was deficient and that he was prejudiced as a result. See Strickland, 466 U.S. at 687.

A "doubly deferential judicial review" applies to "a Strickland claim evaluated under the § 2254(d)(1) standard." Knowles, 556 U.S. at 123; see also Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016). Put another way, federal courts on habeas review give the benefit of the doubt to the state courts and to defense counsel. Woods, 136 S. Ct. at 1151. "Section 2254(d) codifies the view that habeas corpus is 'a guard against extreme malfunctions in the state criminal justice systems,' not a

---

[4] In his response to the motion to dismiss, Daniels attempts to "dispute" the findings made in state proceedings, but he mostly simply reaffirms the allegations he set forth in his federal habeas — which were considered and rejected in state habeas. However, unlike other civil actions in federal court, in federal habeas the Federal Rules of Civil Procedure are applicable only to the extent they do not conflict with the habeas rules. See Rule 12, the Rules Governing Section 2254 Cases. This is most evident with regard to findings of fact made during state proceedings.

> "[Section] 2254(e)(1) – which mandates that findings of fact made by a state court are 'presumed to be correct' – overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party. Unless [the petitioner] can 'rebut [ ] the presumption of correctness by clear and convincing evidence' as to the state court's findings of fact, they must be accepted as correct." (third alteration in original)).

See, e.g., Smith v. Cockrell, 311 F.3d 661, 668 (5th Cir. 2002), abrogated on other grounds by Tennard v. Dretke, 542 U.S. 274 (2004)). In the context of habeas review, a state court's determination of a factual issue is presumed correct. 28 U.S.C. § 2254(e)(1); Teti v. Bender, 507 F.3d 50, 58 (1st Cir. 2007); Proctor v. Cockrell, 283 F.3d 726, 729-30 (5th Cir. 2002).

substitute for ordinary error correction through appeal." <u>Valentino</u>, 972 F.3d at 581 (quoting <u>Harrington</u>, 562 U.S. at 102-03) (additional citation omitted).

<u>Strickland</u>'s first prong, the "performance" inquiry, "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687. A federal court reviewing a habeas petition indulges a "strong presumption" that counsel's conduct fell within the "wide range of reasonable professional assistance." <u>Id.</u> at 689. The "basic lesson" of <u>Strickland</u> is that "judicial scrutiny" of counsel's performance must be "highly deferential." <u>United States v. Mason</u>, 774 F.3d 824, 828 (4th Cir. 2014) (citation omitted). Attorneys "are permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success." <u>Id.</u>

<u>Strickland</u>'s second prong, the "prejudice" inquiry, requires showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." <u>Id.</u> "The likelihood of a different result must be substantial, not just conceivable." <u>Valentino</u>, 972 F.3d at 580 (quoting <u>Harrington</u>, 562 U.S. at 86); <u>accord</u> <u>Shinn v. Kayer</u>, 141 S. Ct. 517, 523 (2020). The question is whether the state court, which has "substantial 'latitude to reasonably determine that a defendant has not [shown prejudice],' still managed to blunder so badly that every fairminded jurist would disagree." <u>Mays v. Hines</u>, 141 S. Ct. 1145, 1149 (2021) (quoting <u>Knowles</u>, 556 U.S. at 123).

The two-pronged <u>Strickland</u> test also applies to claims of ineffective appellate counsel. <u>Bell v. Jarvis</u>, 236 F.3d 149, 164 (4th Cir. 2000) (en banc). An ineffective counsel claim may be disposed of on either prong of the Strickland test. <u>See</u> <u>Jones v. Clarke</u>, 783 F.3d 987, 991-92 (4th Cir. 2015); <u>Spencer v. Murray</u>, 18 F.3d 229, 232-33 (4th Cir. 1994).

AEDPA also limits federal habeas "review under § 2254(d)(1) … to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011); see Muhammad v. Clarke, 2012 U.S. Dist. LEXIS 10129, *24 (E.D. Va. Ja. 26, 2012) (where a petitioner attempts to allege unexhausted facts, the federal court must defer to the state court's finding) (citing Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002); Pinholster, 563 U.S. at 182-83), appeal dismissed, 474 F. App'x 979 (4th Cir. 2012). Pinholster emphasized "that the record under review is limited to the record in existence at that same time — *i.e.*, the record before the state court." Id. (emphasis added). The Fourth Circuit found that the reasonableness of a state court decision is evaluated "'in light of the evidence presented in the State court proceeding.'" Porter v. Zook, 898 F.3d 408, 443 (4th Cir. 2018) (quoting Jones v. Clarke, 783 F.3d 987, 991 (4th Cir. 2015)).[5]

*A. Claim 1*

In Claim 1, Daniels alleges his counsel was ineffective because he failed to move to

_____

[5] Pinholster explained that

> [w]hat makes the consideration of new evidence strange is not how "different" the task would be, but rather the notion that a state court can be deemed to have unreasonably applied federal law to evidence it did not even know existed. We cannot comprehend how exactly a state court would have any control over its application of law to matters beyond its knowledge.

563 U.S. at 183 n.3.

suppress (or otherwise object to) Friarson's in-court identification of him as unreliable. In support of his claim, Daniels asserts that counsel did not inform him about the victim's statement that he was unsure of the perpetrator or otherwise cross-examine the witness about the reasons for his prior statements. Daniels also seeks to amend this claim to include additional evidence that would have impeached the victim's identification of him at trial. Specifically, that the victim allegedly identified someone else in the photo lineup, and did not select Daniels' picture. [Dkt. No. 24, 24-2].

The Supreme Court of Virginia found that Daniels' Claim 1 failed to satisfy either prong of Strickland's two-part test." [Dkt. No. 1-1 at 54].

> The record, including the trial transcript, demonstrates [the victim] knew the petitioner and identified him to police at the hospital within a few hours of the shooting. Although [the victim] later told Nunnally and Godwin he was unsure who shot him, counsel could reasonably have determined this statement affected the weight, not the admissibility, of any in-court identification [the victim] made of the shooter. Counsel therefore could have reasonably determined a motion to suppress as unreliable an in-court identification would have been unsuccessful. Moreover, the petitioner does not allege counsel should have moved to suppress [the victim's] out-of-court identifications of petitioner as the shooter, which occurred before the interview with Nunally and Goodwin.

[Id. at 56]. The Supreme Court of Virginia's dismissal of the claim was neither an unreasonable interpretation of federal law, nor an unreasonable determination of the facts.

The remaining issue with regard to this claim are the documents Daniels submitted after he filed the petition. One document purports to be the photo lineup, and another document purports to be police notes from the lineup that indicate the victim identified picture number 3 as the shooter; Daniels was picture number 4. Daniels argues that this strengthens his claim that counsel should have moved to suppress the victim's in-court dentification of him. [Dkt. No. 24 at 3]. The respondent argues that the exhibits do not relate to the in-court identification, but a pretrial identification, and therefore the motion to amend should be denied because it is barred by the statute of limitations. [Dkt. No. 28 at 4].

In this case, assuming the exhibits are considered as part of Claim 1, the claim still has no merit. First, Detective Russell testified that the victim picked picture number 4 — "He looked through one picture at a time until he got to number four, when he said that's the man who shot me tonight." (CCT R. at 367). Second, the victim identified Daniels as the shooter by name before the photo lineup because he had known Daniels for about two years. Third, Detective Russell testified that the victim signed the photo he picked out at 2:06 a.m. (Id. at 369). The picture introduced at trial, along with the remaining seven photos from the lineup, was picture number four, which the victim signed at 2:06 a.m. (Id. at 425). Fourth, the victim's girlfriend also identified Daniels as the shooter when she testified at trial. (Id. at 320-21).[6] These facts alone are sufficient to dismiss this claim for failing to state a claim under either prong of Strickland v. Washington.

Additionally, however, AEDPA requires that the facts, as well as the claim, be exhausted in state court. See Winston v. Pearson, 683 F.3d 489, 497 (4th Cir. 2012) ("*[N]ew* evidence submitted in federal court that fundamentally alters a claim presented in state court will render that claim unexhausted.") (emphasis added). The exhibits Daniels seeks to amend to Claim 1 were not admitted in the state habeas proceedings, and despite respondent pointing out the fact that Daniels did not explain when or how he came into possession of the exhibits, Daniels has not answered those questions. Daniels also could have raised this argument in his state habeas proceedings because a second police report, which Daniels attached to his state habeas petition, also states that the victim identified photo number 3, which was contrary to the detective's testimony at trial that the victim identified photo number 4. (CCT T. at 367). The motion to amend [Dkt. No. 24] will be denied. Moreover, even if the defaulted facts set forth in the exhibits are considered, Claim 1 still fails and it will be dismissed.

---

[6] The record does not establish that the victim ever adopted the statement in the police record and impeaching Detective Russell's testimony would not have changed the outcome of the proceedings.

*B. Claims 2 and 3*

Claim 2 alleges counsel was ineffective because he should have called the former prosecutor, Kevin Nunnally, and Detective Godwin as witnesses in order to question them regarding the victim's statement that "maybe he wasn't sure" who shot him. Claim 3 alleges that trial counsel excluded Daniels from "a major decision," which was whether to impeach the victim with his prior inconsistent statement to Nunnally and Godwin. [Dkt. No. 1-1 at 6]. The Supreme Court of Virginia found that trial counsel's decision not to call Nunnally and Godwin was a reasonable tactical decision because the potential impeachment testimony would have required the victim be allowed to explain the prior inconsistent statement and that would have resulted in testimony that he had been threatened while incarcerated in the same jail as Daniels.[7] The Supreme Court of Virginia summarized the facts as follows:

> [The victim, Anthony Friarson] was the driver of a gold Mercury Mountaineer sports utility vehicle in which Raneeka Gaither was the front seat passenger. A black car approached the vehicle [Friarson] was driving. [Friarson] had known petitioner for almost two years and recognized him as the driver of the other car. [Friarson] lowered his window to speak with petitioner, but petitioner aimed a silver revolver at him and fired five or six shots. Although the incident lasted about five seconds, and [Friarson] reflexively raised his arm to his face when fired upon, [Friarson] had "no doubt" petitioner was the shooter. [Friarson] pulled away from the scene after the shooting began and drove to the hospital, where he and Gaither were treated for injuries. [Friarson] told the police the petitioner was the shooter and selected petitioner's picture from a photographic lineup.
>
> Prior to trial, the prosecutor, Brooke Petit, disclosed to petitioner's counsel via email that shortly before petitioner's trial was originally scheduled to begin, [former prosecutor, Kevin Nunnally,] and [Detective] Godwin went to talk to [Friarson], who was in jail on undisclosed charges. [Friarson] "began to make statements indicating that maybe he wasn't sure who shot him." Although Nunnally did not document [Friarson's] precise statement, it was "clear that [Friarson] was reluctant to testify while incarcerated."
>
> The article attached to petitioner's prior petition for a writ of habeas corpus states the charges were "dropped" at the request of Nunnally, "who cited witness issues." The article explained [Friarson] had been in jail with petitioner and "feared testifying"

---

[7] Trial counsel called Detective Godwin as a witness to elicit impeachment evidence against Gaither and Friarson, but did not question him about his statement in the jail. (CCT R. at 352-59).

against him. After [Friarson] was released, [Friarson] testified against petitioner before a multi-jurisdictional grand jury, which indicted petitioner for maliciously shooting at an occupied vehicle, possession of a firearm by a violent felon, two counts of malicious wounding, and two counts of use of a firearm in the commission of a felony.

Counsel's affidavit states he conducted an investigation, learned [Friarson] had received threats while in jail, decided it would not help the defense to invite evidence of the threats [Friarson] received, and instead attempted to impeach [Friarson] based on other aspects of his testimony and his criminal record. Counsel's affidavit further states petitioner "knew about all of his evidence, exculpatory and inculpatory prior to trial," and "was provided his discovery as a whole."

(R. No. 181641 at 579-80). The court found that Daniels had failed "to show the strategic decision to avoid evidence [the victim] made [the prior inconsistent] statement because he had been threatened while in jail was unreasonable." [Id. at 580]. Daniels failed to

Demonstrate a reasonable probability that attempting to question Nunnally or Godwin about [the victim's] statement would have produced a different outcome. Extrinsic evidence of [the victim's] prior inconsistent statement was not admissible unless [the victim] was first given an opportunity to explain or deny the statement and the Commonwealth had the opportunity to question him about it. Rule 2:6139(a). Nevertheless, had counsel been able to pursue this line of inquiry, evidence that [the victim] expressed doubt about the shooter's identity while receiving threats in jail, but then after he was released reaffirmed petitioner was the shooter, would not have been helpful to the defense.

[Id.].

As correctly held by the Supreme Court of Virginia, impeaching the victim with evidence that would have allowed the prosecution to introduce evidence the victim had been threatened while in jail would have harmed Daniels' defense. See Truesdale v. Moore, 142 F.3d 749, 754 (4th Cir. 1998) (counsel did not act unreasonably by not pursuing a strategy with the potential to act as a "double-edged sword"). Daniels argues that "no evidence was ever introduced indicating the origin or nature of these threats," and that it was unreasonable for counsel not to use "inherently impeachable inconsistent [evidence] absent any real or tangible danger." [Dkt. No. 1-1 at 6-7].

Daniel's argument ignores the evidence submitted and credited by the Supreme Court of Virginia — his trial counsel's affidavit.

Trial counsel was advised about the victim's statement prior to trial and investigated. In his affidavit, counsel averred that his strategy "was to show reasonable doubt as to the charges against" Daniels, by showing "several inconsistencies from the testimony elicited from the Commonwealth's two victims." (R. No. 181641 at 557). With respect to the prior inconsistent statement that could have been used to impeach, counsel noted that "[t]he victim [had] immediately identified [Daniels] as the shooter when he spoke with authorities following the shooting." [Id.]. Thereafter, the victim "was not cooperative while" being held at the jail, but after his "release[] from the jail, the victim maintained his initial story that the petitioner shot him." [Id. at 557, 558]. Counsel

> decided to avoid this open door to [testimony about the] threats during trial by avoiding the victim's statements while housed at the jail. [Counsel] felt that [he] would be able to impeach the defendant by his record [and also] relied on the known inconsistencies from the victim's testimonies … provided to [him] by [his] investigator. *Mr. Daniels knew about all of his evidence, exculpatory and inculpatory prior to trial*. He was provided his discovery in whole. [Counsel] did not feel the need to call the now mentioned witnesses neither did the petitioner as [] both stated on the record that [they] were ready for trial. From the petitioner, there was an anticipation that the victim would not show for trial or that the victim would not identify the petitioner in court. [Counsel] prepared contrary to the petitioner's belief.

[Id. at 557-58] (emphasis added).

In cases where, as here, the "failure to put on [certain] evidence, or the presentation of evidence which then backfires, may equally expose counsel to collateral charges of ineffectiveness [the] best course for a federal habeas court is to credit plausible strategic judgments in the trial of a state case." Bunch v. Thompson, 949 F.2d 1354, 1364 (4th Cir. 1991); see Strickland, 466 U.S. at 690, 700 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" and counsel was not ineffective for not presenting mitigating

evidence at the penalty stage because of possible exposure to damaging evidence during cross-examination).[8]

Regarding the allegation that counsel did not disclose or discuss this decision with Daniels, Claim 3, the factual issue was decided against Daniels during the state habeas proceedings. The state habeas court found that the potential evidence from Nunnally and Godwin was disclosed to Daniels prior to trial. (R. No. 181641 at 579). Further, trial counsel had no duty to consult with Daniels regarding how and to what extent to impeach the victim.

> A criminal defense attorney is obligated to follow his client's wishes only with regard to the fundamental issues that must be personally decided by the client. As to those limited issues — pleading guilty, waiving a jury, taking the stand, and appealing a conviction or sentence — "an attorney must both consult with the defendant and obtain consent to the recommended course of action." [Florida v.] Nixon, 543 U.S. [175,] 187 [2004]]. If the decision is a tactical one left to the sound judgment of counsel, the decision must be just that — left to the judgment of counsel. *Counsel need not consult with the client about the matter or obtain the client's consent.* See id. (The "duty to consult with the client regarding important decisions ... does not require counsel to obtain the defendant's consent to every tactical decision." (internal quotation marks omitted)); Sexton[ v. French], 163 F.3d [874,] 885 [(4th Cir. 1998)] (whether to file a motion to suppress "is a classic tactical decision" for which consent from the defendant was not required).

United States v. Chapman, 593 F.3d 365, 369 (4th Cir. 2010) (emphasis added).

Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available. Millender v. Adams, 187 F.Supp.2d 852, 872 (E.D. Mich. 2002), aff'd, 376 F.3d 520 (6th Cir. 2004).

---

[8] Byram v. Ozmint, 339 F.3d 203, 209 (4th Cir. 2003) ("[R]eview of counsel's strategic decisions *as to which evidence to present at trial* is 'highly deferential,' and there is a presumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'") (quoting Strickland, 466 U.S. at 689) (emphasis added)); Dunham v. Travis, 313 F.3d 724, 732 (2d Cir. 2002) ("Decisions about 'whether to engage in cross-examination, and if so to what extent and in what manner, are … strategic in nature' and generally will not support an ineffective assistance claim."); United States v. Villalpando, 259 F.3d 934, 939 (8th Cir. 2001) ("[C]ross-examination techniques, like other matters of trial strategy, [are entrusted] to the professional discretion of counsel."); Bergmann v. McCaughtry, 65 F.3d 1372, 1380 (7th Cir. 1995) (noting cross-examination decisions constitute trial strategy); see also Fugate v. Head, 261 F.3d 1206, 1219 (11th Cir. 2001) ("The decision as to whether to cross-examine a witness is 'a tactical one well within the discretion of a defense attorney.'").

"[W]hich witnesses to call is a classic tactical decision left to counsel … and it remains a decision for counsel even when the client disagrees." Id. (quoting Boyle v. McKune, 544 F.3d 1132, 1139 (10th Cir. 2008) and Blanco v. Singletary, 943 F.2d 1477, 1495 (11th Cir. 1991)); see United States v. Jackson, 546 F.3d 801, 814 (7th Cir. 2008) ("[D]eciding what questions to ask a prosecution witness on cross-examination is a matter of strategy."); Dows v. Wood, 211 F.3d 480, 487 (9th Cir. 2000) ("[C]ounsel's tactical decisions at trial, such as refraining from cross-examining a particular witness or from asking a particular line of questions, are given great deference ...."). "Decisions that may be made without the defendant's consent primarily involve trial strategy and tactics, such as what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." See Sexton, 163 F.3d at 885 (internal quotation marks omitted); see also United States v. Munoz, 605 F.3d 359, 381 (6th Cir. 2010) (after impeaching a witness, trial counsel was not ineffective for failing to use "every basis for undermining the [governments'] rehabilitation of" the witness and did "not render his re-cross constitutionally ineffective"); Keel v. French, 162 F.3d 263, 272 (4th Cir. 1998) ("To the extent that counsel discussed the case and the testimony with the experts before trial, as it appears in the record that he did, he may reasonably have concluded that, on balance, the testimony would not have been helpful during the guilt phase. This is the type of decision making by counsel that Strickland protects.").

The Supreme Court of Virginia's dismissal was not an unreasonable interpretation of

federal law, and it was not an unreasonable determination of the facts. Claims 2 and 3 will be dismissed.

   *D. Claim 4*

   In Claim 4, Daniels alleges that counsel was ineffective because he failed to identify a witness and a confidential informant ("CI"), and did not call them as witnesses to impeach the prosecution's witnesses. The unidentified witness allegation comes from the following snippet from a police report provided to trial counsel by the prosecutor: "Detective Travers gleaned that [the] witness saw a dark colored vehicle chasing a light-colored SUV and then heard gunshots." [Dkt. No. 8-8 at 40].

   In dismissing this claim, the Supreme Court of Virginia held that Daniels had failed to

   establish that there was a reasonable probability that investigating and interviewing
   Travers about this statement would have produced a different outcome. The
   unidentified witness' statement, as reflected in the police investigative summary,
   corroborates the occupant of the darker colored vehicle fired gunshots at the
   occupants of the lighter colored sports utility vehicle. Any suggestion this witness
   could have provided information that pointed to a different culprit is pure
   speculation.

(R. No. 181641 at 582).

   The allegation regarding the CI is based upon an email from Detective Bridges to Detective Godwin that Bridges met with a CI who told Bridges that Friarson was a crack dealer and that Daniels had attempted to rob Friarson. [Dkt. No. 1-1 at 40].[9] The CI placed Daniels at the scene and overheard a cell phone call by Friarson, who was on speaker, say that Friarson asked his girlfriend where she was hit, and she responded "Its burning. Help me." Friarson continued stating he could

---

[9] It is unclear if this specific allegation was raised in the state habeas proceedings due to the poorly organized state petition. The Court assumes it is exhausted for purposes of this motion because it is without merit. See Swisher v. True, 325 F.3d 225, 232-33 (4th Cir. 2003) (affirming district court's discretionary decision to elect to deny habeas corpus relief on the merits pursuant to § 2254(b)(2), although claim was "clearly unexhausted"); see, e.g., Cowell v. Clarke, No. 1:18cv391, 2019 U.S. Dist. LEXIS 34301, *17 (E.D. Va. Mar. 1, 2019) (dismissing unexhausted claim on the merits because "it would be a waste of both federal and state judicial resources to do otherwise").

not "believe Jarvis [Daniels] shot at us." (Id.). The CI's only firsthand knowledge was what he overheard on the phone; the rest came from a third party. (Id. at 41). It is readily apparent that the CI was not a source of exculpatory evidence.

Further, Daniels' allegation of ineffective assistance based upon the CI is that trial counsel could have cross-examined Detective Godwin about the CI's statement. [Dkt. No. 1-1 at 33]. As noted herein, trial counsel used Godwin to impeach both victims on specific inconsistencies and made a strategic decision not to impeach Friarson on the prior inconsistent statement Friarson made to Nunnally and Godwin because of the potential for damaging evidence coming in that would not be good for the defense. See, supra, at 13-16. Assuming there was some basis for examining Godwin about the CI's statements, it would have clearly not been of any benefit for Daniels' defense. The CI's statement contains a prior consistent statement by Friarson naming Daniels as the shooter within minutes after the shooting while Friarson was in route to the hospital. Such testimony would have been of greater damage than the explanation for the inconsistent statement Friarson made to Nunnally and Godwin. This portion of the claim will be dismissed.

*E. Claim 5*

Claim 5 alleges trial counsel was ineffective for not conducting an adequate investigation and references not determining the victim's blood alcohol level; obtaining a grand jury transcript; the identification of witnesses; and visiting the crime scene. The allegation regarding identification of witnesses has been addressed in Claim 4.

The Supreme Court of Virginia dismissed the allegation regarding the grand jury transcript under the prejudice prong of Strickland stating Daniels had not proffered "what the grand jury transcript would have shown or articulate how using its unspecified contents would have affected the outcome of the trial." (R. No. 181641 at 581). The state habeas court's dismissal of the

allegation was not an unreasonable application of federal law or an unreasonable determination of the facts. To the contrary, the ruling is consistent with Fourth Circuit precedent. See Goins v. Warden, Perry Corr. Inst., 576 F. App'x 167, 173 (4th Cir. 2014) (citing Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."); Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (appellant's failure to "advise us of what an adequate investigation would have revealed or what these witnesses might have said, if they had been called to testify" was fatal to his ineffective assistance of counsel claim).[10]

With respect to the Friarson's blood alcohol level, he testified at trial that he had one drink that evening, and Daniels has neither produced nor proffered any evidence to the contrary. As with the grand jury transcript, this allegation fails under the prejudice prong of Strickland.

Lastly, Daniels alleges trial counsel did not visit the crime scene. Daniels argues that Friarson testified he had come from a club when he was shot and had one drink (CCT R. at 313), and that "if Friarson's blood alcohol level was very high, his "vision can be impaired" and his "motor skills, and reaction time" could have been adversely affected. [Dkt. No. 1-1 at 9, 23] (emphasis added). Daniels' claim is pure speculation and ignores the fact that Friarson knew him, the person who had shot him, prior to the incident and identified him to police at the hospital within hours of the shooting. [Id. 55-56]. Daniels has not shown that any alleged failure by counsel to investigate this was unreasonable in the context of the record, and he has not proffered what the

---

[10] The trial prosecutor sent an email to trial counsel advising him that Friarson had appeared before the grand jury and that the grand jury had returned indictments. A reasonable defense attorney could have determined that obtaining a transcript of the testimony was not necessary since it was likely inculpatory. Trial counsel already had the police reports and had also investigated the threats that resulted in the prior inconsistent statement. Byram, 339 F.3d at 209 ("'[R]easonable professional judgments support the limitations on investigation.'" (quoting Wiggins v. Smith, 539 U.S. 510, 533 (2003) (quoting Strickland, 466 U.S. at 690-91)).

results of counsel's allegedly inadequate investigation would have shown with regard to the victim's blood alcohol level, only what it might have shown. See Beaver, 93 F.3d at 1195 ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."); Bassette, 915 F.2d at 940-41 (appellant's failure to "advise us of what an adequate investigation would have revealed or what these witnesses might have said, if they had been called to testify" was fatal to his ineffective assistance of counsel claim).[11] Thus, he has failed to prove that any investigation into the victim's intoxication would have made a difference at trial, and the petitioner has not demonstrated sufficient prejudice to demonstrate his claim is meritorious and substantial.

## V. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 18] will be granted, and the motion to amend [Dkt. No. 24] will be denied. An appropriate Order and judgment shall issue.[12]

Entered this 5th day of April 2022.

Alexandria, Virginia

Anthony J. Trenga
United States District Judge

---

[11] See United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) ("A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."); Wing v. Sargent, 940 F.2d 1189, 1191 (8th Cir. 1991) (stating that the burden is on the petitioner to show that counsel's performance was objectively unreasonable, and that a petitioner's speculation regarding how the uncalled witnesses would have testified is insufficient to meet the burden of proof).

[12] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.